Norman J. Watkins, Esq. [State Bar # 87327]
S. Frank Harrell, Esq. [State Bar # 133437]
Shannon L. Gustafson, Esq. [State Bar #228856]
slg@lynberg.com
LYNBERG & WATKINS
A Professional Corporation
333 City Boulevard West, Suite 640
Orange, California 92868-5915
(714) 937-1010
(714) 937-1003 (fax)

Cristina L. Talley, Acting City Attorney
Deborah P. Knefel, Esq. [State Bar # 114189]
OFFICE OF THE ANAHEIM CITY ATTORNEY
200 South Anaheim Boulevard, Suite 356
Anaheim, CA 92805
(714) 765-5169
(714) 765-5123 (fax)
dknefel@anaheim.net
**Attorneys for Defendants**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

TIMOTHY DRUMMOND, individually
and as a Successor-in-Interest to the
Estate of BRIAN THOMAS
DRUMMOND, et al.

**Plaintiffs,**

vs.

CITY OF ANAHEIM, a California
municipal entity, et al.

**Defendants.**

————————————————

No. SACV00-243 AHS (Anx)

Honorable Judge
Alicemarie H. Stotler

**DEFENDANTS' MEMORANDUM
OF CONTENTIONS OF FACT
AND LAW**

Pretrial Conference
Date:  March 23, 2009
Time: 10:00 a.m.
Ctrm: 10A

# TABLE OF CONTENTS

**PAGE**

MEMORANDUM OF CONTENTIONS OF FACT AND LAW . . . . . . . . . . . . . 1

I.   CONTENTIONS OF FACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  CONTENTIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.   Decedent's Excessive Force Claims for Violations of his Fourth Amendment Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.   Plaintiffs' 14th Amendment Claim for Loss of Familial Relationship is Without Merit and Subject to Qualified Immunity . . . . . . . . . . . . 10

    C.   Plaintiff's Conspiracy Claim is Without Merit . . . . . . . . . . . . . . 17

    D.   Plaintiffs' Monell Claim is Without Merit . . . . . . . . . . . . . . . . 17

    E.   Plaintiff's Supplemental Claims Are Defective. . . . . . . . . . . . . 22

    F.   Plaintiff's Supplemental "Negligent Supervision and Hiring" Claim Against the Anaheim Defendants Is Barred by Pertinent Case Law. 22

III. EVIDENTIARY PROBLEMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IV.  BIFURCATION OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

V.   JURY TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

VI.  ATTORNEYS' FEES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

VII. ABANDONMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i
**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

# TABLE OF AUTHORITIES

PAGE

## CASES

Anderson v. Everett Area School Board,
732 F.Supp. 39, 41 (W.D. Pa. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Backlund v. Barnhart,
778 F.2d 1386, 1390 n.5 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . 10

Baker v. McCollan,
443 U.S. 137, 146, 99 S.Ct. 2689, 2695 (1979) . . . . . . . . . . . . . . . . . . . 9

Baldridge v. City of Santa Rosa,
1999 U.S. Dist. LEXIS 1414 at *15-16 (N.D. Cal. 1999) . . . . . . . . . . . 12

Bennett v. City of Slidell,
728 F.2d 762, 768, n. 3 (5th Cir. 1984), cert. denied 472 U.S. 1016, 105 S. Ct.
3476, 87 L. Ed. 2d 612 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Best Life Assurance Co. v. Comm'r,
281 F.3d 828, 834 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Blair v. City of Pomona,
223 F.3d 1074 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Brittain v. Hansen,
451 F.3d 982, 992 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Bryan County v. Brown,
520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) . . . . . . . . 17, 18

Bryant v. Maffucci,
923 F.2d 979, 986 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Campbell v. Burt,
141 F.3d 927, 930 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Case v. Kitsap County Sheriff's Dep't,
249 F.3d 921, 929-930 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 10

City of Los Angeles v. Heller,
475 U.S. 796, 106 S.Ct. 1571 (1986) . . . . . . . . . . . . . . . . . . . . . . . 18, 19

City of Oklahoma City v. Tuttle,
471 U.S. 808, 823-24, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) . . . . . . . . 19

Class Plaintiffs v. Seattle,
955 F.2d 1268, 1285 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ii
**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1

2
Davis v. Scherer,
468 U.S. 183, 194, 104 S.Ct. 3012, 3019 (1984) . . . . . . . . . . . . . . . . . . . 5, 9, 10

3
Dillard v. Curtis,
2004 U.S. Dist. LEXIS 22926 at *41-42 (N.D. Cal. 2004) . . . . . . . . . . . . . . . 12

4

5
Drummond v. City of Anaheim,
343 F.3d 1052, 1062 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

6
Eberle v. City of Anaheim,
901 F.2d 814, 820 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7

8
Edson v. City of Anaheim,
63 Cal. App. 4th 1269, 1274, 74 Cal. Rptr. 2d 614(1998) . . . . . . . . . . . . . . . 22

9
Estate of Imrie v. Golden Gate Bridge,
282 F. Supp. 2d 1145, 1150 (N.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . 11, 12

10

11
Estate of Phillips v. City of Milwaukee,
123 F.3d 586, 593 (7th Cir. 1997) cert. denied, 522 U.S. 1116, 140 L. Ed. 2d 115,
118 S. Ct. 1052 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

12

13
Export Group v. Reef Indus., Inc.,
54 F.3d 1466, 1472 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

14
Fernandez v. City of Cooper City,
207 F. Supp.2d 1371, 1379-80 (S.D.Fla. 2002) . . . . . . . . . . . . . . . . . . . . . 8

15

16
Forrester v. City of San Diego,
25 F.3d 804, 807 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

17
Foster v. Metropolitan Airports Commission,
914 F.2d 1076, 1082 (8th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18

19
Gagne v. City of Galveston,
805 F.2d 558, 560 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

20
Gardner v. Howard,
109 F.3d 427, 430 (8th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

21

22
Gassner v. City of Garland,
864 F.2d 394, 400 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

23
Gassner v. City of Garland,
864 F.2d 394, 400 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

24

25
Gibson v. U.S.,
781 F.2d 1334, 1343 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

26
Graham v. Connor,
490 U.S. 386, 109 S.Ct. 1865, 1872 (1989) . . . . . . . . . . . . . . . . . . . . . . 6, 7

27

28
Griswold v. Connecticut,
381 U.S. 479, 85 S.Ct. 1678 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

iii
**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Hansen v. Black
885 F.2d 642, 646 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Harlow v. Fitzgerald,
457 U.S. 800, 814, 102 S.Ct. 2727 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Henning v. O'Leary,
477 F.3d 492, 495 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Hinkle v. City of Clarksburg,
81 F.3d 416, 421 (4ᵗʰ Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Hope v. Pelzer,
536 U.S. 730, 739-740 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hos v. Pooler,
2006 U.S. Dist. LEXIS 4488 at *12 (E.D. Wash. 2006) . . . . . . . . . . . . . . . . 12

Hunter v. Bryant,
502 U.S. 224, 229, 112 S.Ct. 534 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Kelson v. City of Springfield,
767 F.2d 651 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lee v. City of Los Angeles,
250 F.3d 668, 687 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11, 12

Loomis v. City of Puyallup Police Dept.,
2005 U.S. Dist. LEXIS 35695 at *17-18 (W.D. Wash. 2005) . . . . . . . . . . . . . 12

Lopez v. Southern California Rapid Transit Dist.,
40 Cal. 3d 780, 221 Cal.Rptr. 840 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Loving v. Virginia,
388 U.S. 1, 87 S.Ct. 1817 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Malley v. Briggs,
475 U.S. 335, 341, 106 S.Ct. 1092 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8

Mendoza v. Block,
27 F.3d 1357, 1362-63 (9ᵗʰ Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Monell v. New York City Department of Social Services,
436 U.S. 658, 56 L.Ed. 2d 611, 98 S.Ct. 2018 (1978) . . . . . . . . . . . . 18, 19, 21

Moreland v. Las Vegas Metro. Police Dep't,
159 F.3d 365, 371-373 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Moore v. East Cleveland,
431 U.S. 494, 97 S.Ct. 1932 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Muehler v. Mena,
544 U.S. 93, 103 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

iv
**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1

2

*Munoz v. State of Calif.*
(1995) 33 Cal.App.4th 1767, 1776 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

3

*Myer v. Nebraska,*
262 U.S. 390, 43 S.Ct. 625 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

4

5

*Nunez v. Davis,*
169 F.3d 1222, 1229 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

6

*Pembaur v. Cincinnati,*
475 U.S. 469, 479, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) . . . . . . . . . . . . . 17

7

8

*Pierce v. Society of Sisters,*
268 U.S. 510, 45 S.Ct. 571 (1925) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

9

*Planned Parenthood of Southeastern Pennsylvania v. Casey,*
505 U.S. 833 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13-15

10

11

*Price v. County of San Diego,*
990 F. Supp. 1230, 1244 (S.D.Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 8

12

*Reed v. Hoy,*
909 F.2d 324, 331 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

13

14

*Reyes v. County of San Joaquin,*
2005 U.S. Dist. LEXIS 37353 at *9 (E.D. Cal. 2005) . . . . . . . . . . . . . . . . . . 12

15

*Robbins v. City of Hanford,*
2006 U.S. Dist. LEXIS 44173 at *46 (E.D. Cal. 2006) . . . . . . . . . . . . . . . . . . 12

16

17

*Robertson v. Hecksel,*
420 F.3d 1254, 1262 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

18

*Rodriguez v. Avita,*
871 F.2d 552, 554-555 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

19

20

*Roe v. Wade,*
410 U.S. 113, 93 S.Ct. 705 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

21

*Saman v. Robbins,*
173 F.3d 1150, 1156 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

22

23

*Saucier v. Katz,*
533 U.S. 194, 121 S.Ct. 2151 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

24

*Scott v. Henrich,*
39 F. 3d 912 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

25

26

*Siegert v. Gilley,*
500 U.S. 226, 232 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

27

*Skinner v. Oklahoma,*
316 U.S. 535, 62 S.Ct. 1110 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28

v

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

*Sloman v. City of Simi Valley,*
21 F.3d 1462, 1470 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Smith v. Fontana,*
818 F.2d 1411 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 16

*Sorrels v. McKee,*
290 F.3d 965, 971 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Susag v. City of Lake Forest,*
94 Cal. App. 4th 1401, 1412-1413, 115 Cal. Rptr.2d 269 (2002) . . . . . . . . . . 22

*Taylor v. Castaneda,*
740 F.Supp. 542 (N.D. Ill. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Terry v. Ohio,*
392 U.S. 1, 23, 88 S.Ct. 1868, 1881 (1968) . . . . . . . . . . . . . . . . . . . . . . . 6

*Thompson v. City of Los Angeles,*
885 F.2d 1439, 1443 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Tofano v. Reidel,*
61 F. Supp.2d 289, 302 (D.N.J. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Toguchi v. Chung,*
391 F.3d 1051, 1060 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*United Steel Workers of America v. Phelps Dodge Corp.,*
865 F.2d 1539, 1542 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Van Ort v. Estate of Stanewich,*
92 F.3d 831 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-24

*Venerable v. City of Sacramento,*
185 F. Supp. 2d 1128, 1131 (E.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . 11, 12

*Wagner v. Bay City Texas,*
227 F.3d 316 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wedemeier v. City of Ballwin,*
931 F.2d 24, 26 (8th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*White v. Taylor,*
775 F. Supp. 962 (S.D. Miss. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Whitely v. Albers,*
475 U.S. 312, 318-326 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Whren v. United States,*
517 U.S. 806, 815, 116 S.Ct. 1769 (1996) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Williams v. City of Albany,*
738 F. Supp. 499, 502 (M.D. Ga. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 20

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Wilson v. Layne,
526 U.S. 603, 618 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Wilson v. Meeks,
52 F.3d 1547, 1554 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 9

Woodrum v. Woodward County,
866 F.2d 1121, 1126, (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . 17

## STATUTES

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 18, 25

42 U.S.C. §1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

California Welfare and Institutions Code § 5150 . . . . . . . . . . . . . . . 1

Gov.Code § 945.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Government Code § 815.2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## I.    CONTENTIONS OF FACT

Decedent Brian Drummond had a long, and increasingly serious history of criminal conduct and incarceration. This litigation arises out of Drummond's March 26, 1999 decision to ingest cocaine and alcohol – and then erratically run about in busy Anaheim surface street traffic.  In fact, according to pertinent medical evidence, decedent had been ingesting cocaine and methamphetamine, alcohol and, perhaps, a variety of other mind-altering substances, since the age of 14. Drummond's drug abuse and resultant psychosis on the date of the incident directly led to the unfortunate incident at is issue in this case.

The day before the incident, March 25, 1999, Drummond's then - girlfriend, Olivia Graves, summoned Anaheim police for assistance in bringing Drummond to a medical facility for evaluation under the mental illness commitment provisions of <u>California Welfare and Institutions Code</u> § 5150. Ultimately, responding officers persuaded Drummond to peaceably go with Ms. Graves to a medical facility to receive the lithium medication, which had evidently been prescribed to treat his on-going mental illness.

The following day, March 26, 1999, however, Ms. Graves discovered decedent smoking crack cocaine on her patio, and she ejected him from her apartment. Drummond then began wandering about the neighborhood resulting in one of the neighbors contacting the Anaheim Police Department for assistance. According to the neighbor's report  Drummond was violent, hallucinating and suicidal.

When Officers Brian McElhaney, Kristi Valentine and Christopher Ned located Drummond, he was sweating profusely, incoherent and hallucinating.  Ms. Graves pointedly refused to have any further involvement with Drummond, leaving Anaheim officers alone to deal with decedent.  Based on their own on - scene observations, the officers had little difficulty concluding that Drummond

**1**
## DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

met the criteria for involuntary mental illness commitment under §5150. Accordingly, they attempted to take Drummond into custody and requested an ambulance for his transportation.

While they waited for medical personnel to arrive, the three officers twice attempted to seat Drummond in the back seat of a patrol car. Drummond responded with outbursts of profanity, and physical resistance. In an effort to address their escalating officer safety concerns, the officers placed Drummond on the ground and attempted to immobilize his hands with handcuffs until the ambulance arrived.

According to witnesses, Drummond struggled with Officers McElhaney, Valentine and Ned for between 15-20 minutes — all the time in close proximity to the officers' service revolvers. Decedent continually kicked his legs, flailed his arms and dispelled any possible doubt about his intentions by screaming a variety of threats and profanities. Throughout the struggle, Drummond exhibited extraordinary strength and hostility. Even when a fourth officer, Greg Sawyer, arrived at the scene, officers had difficulty restraining Drummond. Indeed, Drummond simply kicked Sawyer away as he attempted to assist in controlling decedent's legs. As the parties continued to struggle on the ground, officers were ultimately able to apply leg restraints to Drummond's ankles. At this point, Drummond suddenly fell silent and stopped struggling.

Officers quickly realized that Drummond was not conscious and they began immediate resuscitation efforts. The ambulance arrived shortly thereafter and paramedics began treating Drummond and transported him to the hospital.

Toxicology test results from the Orange County Coroner's office subsequently confirmed what the Anaheim officers could readily observe at the scene. Drummond was under the influence of a variety of mind - altering narcotics during his struggle with the officers, including cocaine, cocaine metabolite, alcohol and lithium. And Drummond's drug - abuse on the date of the

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

incident fit into a nearly life - long pattern.

For example, on March 9, 1999, just 17 days prior to the incident, Drummond had been intoxicated on cocaine and hospitalized with kidney failure and heart problems after a similar encounter with Anaheim police and Orange County Sheriff's officers. Drummond was involved in another tense stand - off with Anaheim police in December 1997, the latter part of which is on videotape. Drummond had yet another boisterous, drug - induced encounter with Fullerton Police in 1994 in which Plaintiff was ultimately hospitalized with kidney failure.

While there is varying testimony concerning some of the officer's actions, it is undisputed  that Anaheim police *did not* strike or kick Drummond or use any impact weapon in order to restrain him.  The emergency room physician, Dr. Reid, who examined Drummond on March 26, 1999 found no evidence of physical trauma to Plaintiff's head, neck or torso.

Expert medical testimony will be important concerning the causation issue in this case. Defense medical experts will testify that Drummond's coma is the direct result of his many years of drug abuse. As their testimony will reveal, it is not uncommon for otherwise physically well - conditioned individuals to suffer a cardiac arrhythmia or arrest as the result of cocaine abuse –– even without the type of acute physical exertion Drummond exhibited in this case. In short, the Anaheim Defendants will present compelling evidence that Drummond's injuries are of his own doing, and are simply not the result of police brutality or malice.[1]  In addition, these dangers are only heightened with the addition of alcohol and a pre-existing psychosis.  In short, the phenomenon of "cocaine psychosis" or "excited delirium" is a well known cause of cardiac arrhythmia or arrest and, indeed, death. In this case, Drummond exhibited **all** the signs and symptoms and of cocaine-

---

[1]

By contrast, Drummond's medical experts will evidently claim that he was "asphyxiated" by the defendant officers when they held him prone and handcuffed on the ground.

**3**
**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

induced excited delirium and **none** of the physical manifestations one would expect to find in a person who has suffered a catastrophic asphyxia. In short, not only did the officers not use excessive force, but the decedent's resulting injuries were caused entirely by his risky lifestyle and behavior.

After his transportation to the hospital on March 26, 1999, Drummond was in a vegetative state until his death on July 26, 2006. After his death, Drummond's children, Paula Drummond, Brian Drummond, Jr., Timothy Drummond, and Mary Drummond, brought the instant lawsuit asserting a host of federal and state law theories of relief for the events that occurred on March 26, 1999.

## II.   CONTENTIONS OF LAW

Plaintiffs seek recovery under the federal civil rights provisions of 42 U.S.C. § 1983, as well as under state tort law. Defendants now address the pertinent law governing Plaintiffs' allegations.

### A.   Decedent's Excessive Force Claims for Violations of his Fourth Amendment Rights[2]

As noted above, Drummond seeks recovery for alleged excessive force under the federal civil rights provisions of 42 U.S.C. § 1983. The statute provides

---

[2]
Plaintiffs' accompanying claims under the Eighth, Fifth and Fourteenth Amendment are without merit. The Eighth Amendment only applies to force claims for convicted prisoners. See, Whitely v. Albers, 475 U.S. 312, 318-326 (1986)(claims of excessive force to subdue convicted prisoner analyzed under Eight Amendment not Fourth Amendment). The Fifth Amendment applies only to actions by the federal government. See, Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001) ("The Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government – not to those of state or local governments"). Finally, the Fourteenth Amendment does not apply when the substantive right is defined by another amendment, such as the Fourth Amendment here. See, Eberle v. City of Anaheim, 901 F.2d 814, 820 (9th Cir. 1990) (finding that it is reversible error to give a substantive due process instruction in an excessive force case after the Supreme Court's decision in Graham which provides excessive force cases are to be analyzed under the Fourth Amendment).

4

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any state or territory . . . causes to be subjected, any citizen of the United States. . .*to the deprivation of any right, privilege or immunities secured by the Constitution and laws,* shall be liable to the party injured in an action at law . . . .

(Emphasis added)

The Supreme Court has recognized that Section 1983 damage suits against governmental officials entail substantial "social costs" which include the "expense of litigation, the diversion of official energy from pressing public issues and the deterrence of able citizens from acceptance of public office." Harlow v. Fitzgerald, 457 U.S. 800, 814, 102 S.Ct. 2727 (1982).  The Court has also recognized that "[o]fficials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages . . ."[3] Davis v. Scherer, 468 U.S. 183, 195, 104 S.Ct. 3012 (1984).  The qualified immunity doctrine addresses these concerns by providing that:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known.

Harlow v. Fitzgerald, supra, 457 U.S. at 818 (Emphasis added)

Here, there is no "clearly established" law which bars the officers' conduct in this case. If anything, the existing law supports their position.

---

[3] Another important public policy rational for qualified immunity is that the threat of litigation concerning hazy, gray areas of Constitutional law would doubtlessly produce unacceptable tentativeness in law enforcement and "officials should not err always on the side of caution because they fear being sued." Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534 (1991) (Citation omitted.)

5

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

In 1989, the Supreme Court ruled that an objective "reasonableness" test governs
peace officer use of force -- "the question is whether the officers' actions are
objectively reasonable in light of the facts and circumstances confronting them,
without regard to their underlying intent or motivation." Graham v. Connor, 490
U.S. 386, 109 S.Ct. 1865, 1872 (1989). Moreover, the Ninth Circuit subsequently
advised officers that they are not required to "retreat" before using force (Reed v.
Hoy, 909 F.2d 324, 331 (9th Cir. 1989)) and that they need not attempt the least
"intrusive" force options available when confronting suspects. Scott v. Henrich,
39 F. 3d 912 (9th Cir. 1994); see, Graham v. Connor, supra, 490 U.S. at 396
("Fourth Amendment jurisprudence has long recognized that the right to make an
arrest or investigatory stop necessarily carries with it the right to use some degree
of physical coercion or threat thereof to effect it.")

　　　　The Graham "use of force" standard makes broad allowance for the
exigencies and danger inherent in police work.  See, Graham v. Connor, 490 U.S.
386, 109 S.Ct. 1865, 1872 (1989) ("Not every push or shove, even if it may seem
unnecessary in the peace of a judge's chamber's, violates the Fourth
Amendment."); Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986)
(Qualified immunity protects "all but the plainly incompetent or those who
knowingly violate the law."); Terry v. Ohio, 392 U.S. 1, 23, 88 S.Ct. 1868, 1881
(1968)("Certainly it would be unreasonable to require that police officers take
unnecessary risks in the performance of their duties.")

　　　　It also makes allowance for the fact that reasonable officers may
legitimately differ on how to best respond to a given fact pattern.  See, Graham v.
Connor, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 1872 (1989) (Courts must make
"allowance for the fact that police officers are often forced to make split-second
judgments -- in circumstances that are tense, uncertain and rapidly evolving --
about the amount of force that is necessary in a particular situation.")  Indeed,
even "if officers of reasonable competence could disagree on the issue, immunity

6
**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

should be recognized." <u>Malley v. Briggs</u>, <u>supra</u>, 475 U.S. at 341. As summarized by the Ninth Circuit:

> The inquiry is not whether another reasonable or more reasonable interpretation of events can be constructed . . . after the fact. Rather, the issue is whether a reasonable officer could have believed that his conduct was justified. This is so notwithstanding that reasonable officers could disagree on the issue.

<u>Reynolds v. County of San Diego</u>, <u>supra</u>, 84 F.3d at 1170; <u>see</u>, <u>Graham v. Conner</u>, <u>supra,</u> 490 U.S. at 396 (All use of force must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.").

Under this standard, courts have not hesitated to approve use of force in order to handcuff or subdue subjects in the course of tense, rapidly unfolding incidents. <u>See</u>, <u>e.g.</u>, <u>Saman v. Robbins</u>, 173 F.3d 1150, 1156 (9th Cir. 1999) (Single kick to subject "objectively reasonable as a matter of law"); <u>Mendoza v. Block</u>, 27 F.3d 1357, 1362-63 (9th Cir. 1994) (Use of police dog to secure subject reasonable under the circumstances); <u>Forrester v. City of San Diego</u>, 25 F.3d 804, 807 (9th Cir. 1994) (Use of pain compliance techniques on non-resisting abortion protesters that resulted in bruises, a pinched nerve and a broken wrist was objectively reasonable); <u>Foster v. Metropolitan Airports Commission</u>, 914 F.2d 1076, 1082 (8th Cir. 1990) (Pulling subject from car and handcuffing him objectively reasonable).

And this is particularly true in the case of officers' restraining suspects in a prone position in order to effect an arrest. "In light of the circumstances, defendant Tudor and Schreiber's efforts to control Alan by exerting some weight or pressure on his arms, legs and back did not constitute excessive force. <u>Wagner v. Bay City Texas</u>, 227 F.3d 316 (5th Cir. 2000) (Use of pepper spray, taking person to the pavement, handcuffing him, placing knee to the back while restraining neck with a

7
**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

baton, as well as having two officers on top of him is not unreasonable in response to violent opposition to officers); <u>Estate of Phillips v. City of Milwaukee</u>, 123 F.3d 586, 593 (7th Cir. 1997) <u>cert. denied</u>, 522 U.S. 1116, 140 L. Ed. 2d 115, 118 S. Ct. 1052 (1998) (No excessive force found when officers placed suspect in prone position with arms and legs restrained and put knee in suspect's back for about a minute to control him where suspect actively resisted arrest); <u>Gassner v. City of Garland</u>, 864 F.2d 394, 400 (5th Cir. 1989) (Choke hold, wrestling to the ground, and handcuffing in response to resistance to arrest for speeding and disorderly conduct is not excessive force); <u>Fernandez v. City of Cooper City</u>, 207 F. Supp.2d 1371, 1379-80 (S.D.Fla. 2002) (Use of pepper spray, taking person down to ground, placing knee in back and putting cuffs on hands and legs is not excessive force against a schizophrenic person resisting arrest); <u>Tofano v. Reidel</u>, 61 F. Supp.2d 289, 302 (D.N.J. 1999) (Restraint in a prone position by three officers on top of an emotionally disturbed person who violently resisted arrest and handcuffing, is objectively reasonable); <u>Price v. County of San Diego</u>, 990 F. Supp. 1230, 1244 (S.D.Cal. 1998) (Hogtie restraint, pressure to torso, knee to back, foot against head, and placing mentally unstable person prone on hot asphalt was reasonable force in response to resistance toward officers).

Here, trial evidence will reveal that the Anaheim officers subdued Drummond with minimal force and, otherwise acted with remarkable restraint given decedent's mental illness and the level of his physical resistance.  Decedent simply cannot demonstrate, as he must, that Anaheim's officers were "plainly incompetent," or that they otherwise sought to subject Drummond to intentional physical abuse. <u>See</u>, <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986) (Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law.") And even if there were room for reasonable officers to disagree on the issue -- itself an untenable position -- qualified immunity would still be required in any event.  <u>See</u>, <u>Reynolds v. County of San Diego</u>, <u>supra</u> 84

**8**
**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

F.3[rd] at 1170 (Qualified immunity shields peace officers' tactical choices "notwithstanding that reasonable officers could disagree on the issue"); <u>see also</u>, <u>Saucier v. Katz</u>, <u>supra</u>, 533 U.S. at 206 ("Qualified immunity operates in [excessive force cases] just as it does in others, to protect officers from the sometimes 'hazy border between excessive and acceptable force'....")

The Supreme Court has emphasized that qualified immunity is an issue for resolution by the Court. <u>See</u>, <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S.Ct. 2151 (2001); <u>Nunez v. Davis</u>, 169 F.3d 1222, 1229 (9th Cir. 2000)("Whether a public official is entitled to qualified immunity is a question of law."). Accordingly, Defendants intend to move for judgment as a matter of law at the close of evidence.[4]

_____

[4]

In <u>dicta</u>, the Ninth Circuit observed that "Anaheim's training materials are relevant not only to whether the force employed in this case was objectively unreasonable, see supra section I.A.3 [discussing Section 1983 principles], but also to whether reasonable officers would have been on notice that the force employed was objectively unreasonable." <u>Drummond v. City of Anaheim</u>, 343 F.3d 1052, 1062 (9th Cir. 2003). The Ninth Circuit itself, however, has held that its <u>dicta</u> is not of precedential value. <u>See</u>, <u>Best Life Assurance Co. v. Comm'r</u>, 281 F.3d 828, 834 (9th Cir. 2002) (Defining dictum as "a statement 'made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential . . .' ") (quoting Black's Law Dictionary 1100 (7th ed. 1999)); <u>Export Group v. Reef Indus., Inc.</u>, 54 F.3d 1466, 1472 (9th Cir. 1995) (Holding that statements were dicta where they "were not necessary to the decision".) Moreover, the Ninth Circuit's <u>dicta</u> in this case conflicts with binding Supreme Court and Ninth Circuit authority. (Continued on next page).
(Continued on next page).
        The United States Supreme Court has repeatedly found that the requirements of federal constitutional law -- not state or local rules -- set the standard for liability under 42 <u>U.S.C.</u> § 1983. <u>See</u>, <u>Baker v. McCollan</u>, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."); <u>Davis v. Scherer</u>, 468 U.S. 183, 194, 104 S.Ct. 3012, 3019 (1984)("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some [local] statutory or administrative provision."); <u>Whren v. United States</u>, 517 U.S. 806, 815, 116 S.Ct. 1769 (1996) (State and local "police department practices . . . vary from place to place and from time to time. We cannot accept that the . . . seizure protections of the Fourth Amendment are so variable, and can be made to turn upon such trivialities.")(Citations omitted).
        Given these principles, the Ninth Circuit has forcefully rejected the notion that state or local policies have _**any relevance**_ to the proper resolution of Section 1983 litigation. The Ninth Circuit joins all other Circuits in reaching this conclusion:
        Whether the deputies violated a state law or an internal departmental policy is not the focus of our inquiry. <u>See</u>, <u>Wilson v. Meeks</u>, 52 F.3d 1547, 1554 (10th Cir. 1995) (finding qualified immunity; 'Violation of a police departmental regulation is insufficient for liability under section 1983.'); <u>Gagne v. City of Galveston</u>, 805 F.2d 558, 560 (5th Cir. 1986)

9
**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

B.  **Plaintiffs' 14th Amendment Claim for Loss of Familial Relationship is Without Merit and Subject to Qualified Immunity**

The Fourteenth Amendment contains no explicit textual basis for recognition of such a derivative, third-party right arising from the death of another. See, Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833 (1992) (Due process clause merely declares no State shall "deprive any person of life, liberty or property without due process of law.")  In the absence of explicit recognition by the Fourteenth Amendment itself, the existence of what have come to be termed "family integrity" rights has been the subject of sharp debate among the Circuits for nearly three decades.

For its part, the Ninth Circuit has generally recognized the existence of potential "family integrity" rights in favor of two classes of individuals: (i) children of those who die as a result of law enforcement conduct (Smith v. Fontana, 818 F.2d 1411 (9th Cir. 1987), and (ii) parents of those who die as a

---

('Allegations about the breach of a statute or regulation are simply irrelevant to the question of an official's eligibility for qualified immunity in a suit over the deprivation of a constitutional right.'); Backlund v. Barnhart, 778 F.2d 1386, 1390 n.5 (9th Cir. 1985) (concluding that any state violation of its own policy is 'irrelevant' to the question of whether state officials are entitled to qualified immunity).

Rather, our focus is on whether a reasonable officer would have known that the deputies' conduct violated [the plaintiff's] federal statutory or constitutional rights rather than merely a state law or policy provision. Davis v. Scherer, 468 U.S. 183, 194 & n.12, 104 S. Ct. 3012 (1984)('Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision . . ..'); Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997) (finding qualified immunity; 'There is no §1983 liability for violating prison policy. [Plaintiff] must prove that [the official] violated his constitutional right ....'); Gagne, 805 F.2d at 560 (Whether an official is entitled to qualified immunity 'must be answered solely by an inquiry into whether the constitutional right at issue was clearly established at the time of the events in question'.); Backlund, 778 F.2d at 1390 (dismissing plaintiffs' § 1983 claim because they 'failed to show a violation of any constitutional right,' despite violation of internal policy). Case v. Kitsap County Sheriff's Dep't, 249 F.3d 921, 929-930 (9th Cir. 2001); see, Campbell v. Burt, 141 F.3d 927, 930 (9th Cir. 1998) ("As a general rule, a violation of state law does not lead to liability under Section 1983."); Backlund v. Barnhart, 778 F.2d 1386, 1390 n.5 (9th Cir. 1985) (Concluding that any state violation of its own policy is "irrelevant" to the question of whether local government employees are liable under Section 1983).

10

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

result of law enforcement conduct (Kelson v. City of Springfield, 767 F.2d 651 (9th Cir. 1985)).  However, and critically for qualified immunity analysis, at the time of the 1999 incident at issue in this case, and going forward to the present date, the Ninth Circuit has never gone beyond generalities and clearly specified the parameters for Smith/Kelson "family integrity" rights.

Decisions within the Ninth Circuit – at both the district and appellate level – discussing Fourteenth Amendment substantive due process claims regarding familial relationships have been inconsistent at best. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004) (Recognizing the claim but *failing to state an appropriate standard*; only that "negligently inflicted harm is categorically beneath the threshold of constitutional due process."); Lee v. City of Los Angeles, 250 F.3d 668, 685 (9th Cir. 2001) (Recognizing the claim as an interest under both the Fourteenth and First Amendments as a right to be protected from "*unwarranted interference*" with familial association); Estate of Imrie v. Golden Gate Bridge, 282 F. Supp. 2d 1145, 1150 (N.D. Cal. 2003) (Indicating confusion over whether such a claim is cognizable under the First Amendment; Recognizing the claim under the 14th Amendment, but *failing to state an appropriate standard*; only that alleged "omissions" are insufficient to state a claim); Venerable v. City of Sacramento, 185 F. Supp. 2d 1128, 1131 (E.D. Cal. 2002) (In an officer-involved shooting case, denying motion to dismiss; stating that the standard is "*deliberate indifference*" and making *no mention of a "purpose to commit harm" requirement*); Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 371-373 (9th Cir. 1998) (In an officer-involved shooting case, affirming summary judgment for the officers under such a claim because their conduct did not "*shock the conscience*" and did not meet the "*purpose to commit harm*" requirement; the officers "did not intend to commit any harm unrelated to the legitimate use of force necessary to protect the public and themselves."); Brittain v. Hansen, 451 F.3d 982, 992 (9th Cir. 2006) (In a custodial rights case, applying

**11**
**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1   the "***shock the conscience***" standard.)

2         Adding to this mix of discordant pronouncements is a substantial body of

3   unpublished cases[5] from district courts within the Ninth Circuit that inconsistently

4   apply different tests for Fourteenth Amendment substantive due process claims

5   regarding familial relationships. <u>See</u>, <u>e.g.</u>, <u>Baldridge v. City of Santa Rosa</u>, 1999

6   U.S. Dist. LEXIS 1414 at *15-16 (N.D. Cal. 1999) (Applying "***deliberate***

7   ***indifference***" standard); <u>Dillard v. Curtis</u>, 2004 U.S. Dist. LEXIS 22926 at *41-42

8   (N.D. Cal. 2004) (Applying "***purpose to harm***" and "***shocks the conscience***" *and*

9   "***deliberate indifference***"); <u>Reyes v. County of San Joaquin</u>, 2005 U.S. Dist.

10  LEXIS 37353 at *9 (E.D. Cal. 2005)(Applying "***deliberate indifference***" *and*

11  "***unwarranted interference***"); <u>Loomis v. City of Puyallup Police Dept.</u>, 2005 U.S.

12  Dist. LEXIS 35695 at *17-18 (W.D. Wash. 2005) (Applying "***shocks the***

13  ***conscience***" and "***intent to do harm unrelated to the legitimate use of force***");

14  <u>Hos v. Pooler</u>, 2006 U.S. Dist. LEXIS 4488 at *12 (E.D. Wash. 2006) (Applying

15  "***purpose to cause harm*** unrelated to the legitimate object of the use of force");

16  <u>Robbins v. City of Hanford</u>, 2006 U.S. Dist. LEXIS 44173 at *46 (E.D. Cal. 2006)

17  (Citing an "***unwarranted state interference***" standard).

18        In short, some Courts within the Ninth Circuit cite to a "deliberate

19  indifference" standard in resolving Fourteenth Amendment "family relationship"

20  claims. (<u>See</u>, <u>Venerable</u>, <u>Baldridge</u>, <u>Dillard</u>, and <u>Reyes</u>, above). Other Courts

21  follow a two part "shocks the conscience" ***and*** "purpose to commit harm" test –

22  or choose to apply only one of these two standards. (<u>See</u>, <u>Moreland</u>, <u>Brittain</u>,

23  <u>Loomis</u>, and <u>Hos</u>, above). Others apply a completely different standard altogether

24  or offer none at all. (<u>See</u>, <u>Lee</u>, <u>Toguchi</u>, <u>Estate of Imrie</u>, and <u>Robbins</u>, above).

25  Some Courts even apply novel hybrids of several different standards. (<u>See</u>, <u>Reyes</u>

26  and <u>Dillard</u>, above).

27  _____

5

28  "[U]npublished decisions of district courts may inform our qualified immunity analysis." <u>Sorrels v. McKee</u>, 290 F.3d 965, 971 (9th Cir. 2002).

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1    Put simply, the parameters of Fourteenth Amendment "familial relationship"

2    claims in 1999 were unsettled at best – and they remain so to this day. With the

3    issue still generating scholarly debate ten years after the incident in this case, the

4    Anaheim officers were plainly left without meaningful guidance on the issue,

5    thereby making it "impossible for [them] reasonably to anticipate whether their

6    conduct may give rise to liability for damages." Anderson v. Creighton, supra,

7    483 U.S. at 639-640.  Plaintiffs' "family association" claim thus presents a classic

8    case for recognition of qualified immunity.   As the Supreme Court has explicitly

9    stated, "***If judges ... disagree on a constitutional question, it is unfair to subject***

10   ***police to money damages for picking the losing side of the controversy***." Wilson

11   v. Layne, 526 U.S. 603, 618 (1999); see, Hope v. Pelzer, 536 U.S. 730, 739-740

12   (2002)("[I]n effect the qualified immunity test is simply the adaptation of the fair

13   warning standard to give officials . . .the same protection from civil liability and

14   its consequences that individuals have traditionally possessed in the face of vague

15   criminal statutes."); May v. Baldwin, supra, 109 F.3d at 561 (Qualified immunity

16   appropriate where the "contours [of the right] in question are vague and its legal

17   limits and standards have yet to be defined.")  (Citation omitted); Romero v.

18   Kitsap County, supra, 931 F.2d at 628 (The law "is not `clearly established'

19   [where] a reasonable person would not be expected to know how to structure his

20   conduct in order to avoid liability").

21   Even assuming for argument sake that generalized recognition of "family

22   integrity" rights provides a defense to qualified immunity -- and it does ***not*** --

23   various Supreme Court decisions indicate that there are no "family integrity"

24   rights ***at all*** in the "excessive force" context.  In Planned Parenthood of

25   Southeastern Pennsylvania v. Casey, 505 U.S. 833 (1992), the Supreme Court

26   discussed the analytical basis for Fourteenth Amendment liberty interests – and

27   concluded that they collectively seek to protect freedom of individual thought and

28   personal decision making.  Specifically, the Planned Parenthood Court found that

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

the Fourteenth Amendment was designed to "plac[e] limits on States' right to interfere with a person's most basic ***decisions*** about family and parenthood." <u>Id</u>. at 849 (emphasis added.)  As explained by the Court:

> Our law affords constitutional protection to personal ***decisions*** relating to marriage, procreation, contraception, family relationships, child rearing and education. . . .  These matters, involving the most intimate and personal ***choices*** a person may make in a lifetime, ***choices*** central to personal dignity and autonomy, are central to the liberty protected by the 14th Amendment. . . .  ***Beliefs*** about these matters could not define the attributes of personhood were they formed under the compulsion of the state.

<u>Id</u>. at 851 (emphasis added.)

In reaching this conclusion, the Supreme Court reviewed and cited much of its existing due process precedent.  In each case where the Court recognized a "liberty interest", it acted against broadly-focused legislative schemes which sought to regulate whole classes of individuals' thoughts and choices regarding presumptively personal matters.  <u>See</u>, <u>Roe v. Wade</u>, 410 U.S. 113, 93 S.Ct. 705 (1973)(Court invalidates Texas statute criminalizing abortion); <u>Moore v. East Cleveland</u>, 431 U.S. 494, 97 S.Ct. 1932 (1977)(Court strikes down Ohio municipal ordinance which attempted to define and regulate with whom a person could live); <u>Loving v. Virginia</u>, 388 U.S. 1, 87 S.Ct. 1817 (1967)(Invalidating state statute prohibiting interracial marriage); <u>Griswold v. Connecticut</u>, 381 U.S. 479, 85 S.Ct. 1678 (1965)(Invalidating state statute forbidding use of contraceptives.); <u>Skinner v. Oklahoma</u>, 316 U.S. 535, 62 S.Ct. 1110 (1942)(Striking down state statute requiring vasectomies for "habitual criminals."); <u>Pierce v. Society of Sisters</u>, 268 U.S. 510, 45 S.Ct. 571 (1925)(Invalidating Oregon statute which impermissibly interfered with parent rights to direct their children's education.); <u>Myer v. Nebraska</u>, 262 U.S. 390, 43 S.Ct. 625 (1923)(Invalidating statute which

14

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

impermissibly interfered with parent rights to direct their children's education).

The Supreme Court's discussion of the rationale for, and outside parameters of, Fourteenth Amendment liberty interests is one of its more lengthy and comprehensive opinions.  Indeed, two years later, in striking down an attempted expansion of liberty interests, the Court chiefly referred the parties and the Country back to the limits on due process rights expressed in Planned Parenthood.  See, Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807 (1994).

The plaintiff in Albright claimed that he had a Fourteenth Amendment liberty interest protecting him from "false arrest" by peace officers.  The court initially emphasized that Planned Parenthood "describ[es] cases in which substantive due process rights have been recognized." Id. at 272.  Refusing to expand liberty interest cases beyond those areas involving broadbrush state action limiting whole classes of individuals' ability to make choices concerning family life, the Court made short work of the Albright plaintiff's proposed expansion of the law. Id. at 272 ("Petitioner's claim. . . is markedly different from those recognized in [Planned Parenthood].")  Tellingly, the Court concluded by noting that it "has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decision making in this unchartered area are scarce and open ended." Id.

The same factors which led to the rejection of the Albright plaintiff's attempted Fourteenth Amendment "false arrest" claim bar the Drummonds' "family integrity" claim as well. As in Albright, the Drummonds do not challenge a sweeping legislative framework which limits their -- and many others' -- right to make *choices* concerning private family matters such as procreation, contraception or living arrangements.  Rather, and as in Albright, they challenge an isolated incident involving peace officer conduct which affected them alone.  The officers did not tell Plaintiffs what to believe, think or choose regarding the conduct of their personal life -- and, like the failed Albright plaintiff, Plaintiffs make no

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1  allegation to that effect.

2        In short, Casey and Albright collectively lay down the outside limit of

3  "liberty interest" expansion by the Supreme Court.  To the extent that the Ninth

4  Circuit's generalized expansion of Fourteenth Amendment jurisprudence in Smith

5  v. Fontana, 818 F.2d 1411 (9th Cir. 1987) ventures beyond that more recently

6  drawn line, the decision should be reconsidered and formally reversed. See,

7  Henning v. O'Leary, 477 F.3d 492, 495 (7th Cir. 2007) (Finding it a "dubious

8  proposition" that the daughter and parents of decedent could assert a constitutional

9  claim for loss of companionship.); Robertson v. Hecksel, 420 F.3d 1254, 1262

10  (11th Cir. 2005)(Rejecting familial association right: "While the parent/adult child

11  relationship is an important one, the Constitution does not protect against all

12  encroachments by the state onto the interests of individuals. Instead, it is the

13  province of the Florida legislature to decide when a parent can recover for the loss

14  of an adult child. We will not circumvent its authority through an unsupported

15  reading of the Fourteenth Amendment.")  Needless to say, a plaintiff can never

16  resist qualified immunity by citing to a non-existent constitutional "right." See,

17  Siegert v. Gilley, 500 U.S. 226, 232 (1991)  ("A necessary concomitant to the

18  determination of whether the constitutional right asserted by a plaintiff is clearly

19  established at the time the defendant acted is the determination of whether the

20  plaintiff has asserted a violation of a constitutional right of all."); Class Plaintiffs

21  v. Seattle, 955 F.2d 1268, 1285 (9th Cir. 1992) (Stating the "well established" rule

22  that a panel "may reconsider earlier Ninth Circuit precedent. . . after an intervening

23  Supreme Court decision.")

24        Defendants have filed a Motion for Summary Adjudication as to the

25  foregoing issues, which is set to be heard on March 23, 2009.

26  / / /

27

28  / / /

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

## C.    Plaintiff's Conspiracy Claim is Without Merit

It is well-settled that a plaintiff has the burden to establish a civil rights conspiracy.  See, Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996) ("[Plaintiffs] have a *weighty burden* to establish a civil rights conspiracy.") (emphasis added).  Where, as here, the burden of proof is on the plaintiff, defendant may move for summary judgment by "pointing to the absence of facts to support the plaintiff's claim."  United Steel Workers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989).  A claim for conspiracy under Section 1983 requires evidence of an agreement, or a meeting of the minds, to violate the plaintiff's constitutional rights.  Woodrum v. Woodward County, 866 F.2d 1121, 1126, (9th Cir. 1989) (*dismissal of 1983 conspiracy claim affirmed* because Plaintiff "could allege *no specific facts to show any agreement* between ... any of the named defendants ... [C]onclusary allegations that [the defendants] conspired do not support a claim for violation of his Constitutional rights under § 1983") (emphasis added))  Thus, a triable conspiracy claim requires evidence of *each* Defendants' participation in the conspiracy and evidence of *each* Defendants' agreement or meeting of the minds with alleged co-conspirators.  Gibson v. U.S., 781 F.2d 1334, 1343 (9th Cir. 1986)).  Here, nothing other than valueless conclusions are offered and, as noted above, vague and conclusory allegations charging Defendants with participation in a "conspiracy" are never enough to support a claim under Section 1983.

## D.    Plaintiffs' Monell Claim is Without Merit

In order to seek recovery against a municipal employer, the United States Supreme Court requires a substantial additional showing beyond the fact that "it employ[ed] a tortfeasor." Bryan County v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); see also, Pembaur v. Cincinnati, 475 U.S. 469, 479, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) ("[W]hile Congress never questioned its power to impose civil liability on municipalities for their *own*

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1   illegal acts, Congress did doubt its constitutional power to impose civil liability in

2   order to oblige municipalities to control the conduct of ***others***") (emphasis added).

3   Accordingly, the Supreme Court has "consistently refused to hold municipalities

4   liable under a theory of ***respondeat superior***." <u>Brown</u>, 520 U.S. at 403. As such,

5   Defendants City of Anaheim and former Chief of Police Roger Baker cannot be

6   held liable for the alleged actions of the individual officer Defendants.

7       Similarly, Plaintiffs may not assert a claim against Defendant Baker simply

8   because he was a supervisor. Rather, a plaintiff may only state a claim against a

9   supervisor, where "there exists either (1) his or her personal involvement in the

10  constitutional deprivation, or (2) a sufficient causal connection between the

11  supervisors wrongful conduct and the constitutional violation." <u>See</u>, <u>Hansen v.</u>

12  <u>Black</u> 885 F.2d 642, 646 (9th Cir. 1989). Because there is no respondeat superior

13  liability under Section 1983, and because there is no evidence that Defendant

14  Roger Baker was directly involved in the alleged civil right deprivation, this clam.

15  must fail.

16      In any event, before Plaintiffs can establish a <u>Monell</u> claim, they must first

17  prove that their constitutional rights were violated by the individual officers on

18  March 26, 1999. The Supreme Court made the point forcefully in <u>City of Los</u>

19  <u>Angeles v. Heller</u>, 475 U.S. 796, 106 S.Ct. 1571 (1986).

20      The <u>Heller</u> plaintiff sued various Los Angeles police officers for their

21  alleged use of excessive force during his arrest under 42 <u>U.S.C.</u> § 1983. Plaintiff

22  also named the City of Los Angeles as a defendant. The trial court bifurcated the

23  <u>Monell</u> issue and the jury returned a verdict in favor of the individual defendants.

24  The <u>Heller</u> plaintiff argued that he should be permitted to proceed to a trial of the

25  <u>Monell</u> issue -- regardless of the jury's findings. The District Court disagreed and

26  dismissed the action against the City and its officials -- concluding that there was

27  no basis for liability since the individual officers had been exonerated by the jury.

28  / / /

**18**
**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1   The United States Supreme Court subsequently affirmed the reasoning of
2   the trial court:

> 3   [T]his was an action for damages, and neither <u>Monell v.</u>
> 4   <u>New York City Department of Social Services</u>, 436 U.S.
> 5   658, 56 L.Ed. 2d 611, 98 S.Ct. 2018 (1978), nor any
> 6   other of our cases authorizes the award of damages
> 7   against a municipal corporation based on the actions of
> 8   one of its officers ***when in fact the jury has concluded***
> 9   ***that the officer inflicted no constitutional harm.*** If a
> 10   person has suffered no constitutional injury at the hands
> 11   of the individual police officer, ***the fact that a***
> 12   ***department regulation might have authorized the use of***
> 13   ***constitutionally excessive force is quite beside the point.***

14   <u>City of Los Angeles v. Heller</u>, <u>supra</u>, 475 U.S. at 799 (Emphasis added.)

15   As in <u>Heller</u>, the jury here could find that decedent's constitutional rights
16   were not violated by the individual officers. In short, if decedent was not
17   subjected to excessive force, then it follows that no policy or custom of Defendant
18   City of Anaheim  was responsible for causing injury to decedent.

19   Finally, even if the jury were to find against the individual officers, there is
20   still insufficient evidence to support a <u>Monell</u> phase. . <u>See</u>, <u>Monell</u>, 436 U.S. at
21   694 (Plaintiff must present evidence of a pattern of unconstitutional acts by
22   government officials that are "so permanent and well settled as to constitute an
23   [unspoken] 'custom or usage' with the force of law").

24   Simply put, Courts have proven to be particularly sensitive to claims that a
25   government entity maintains an unspoken "custom" of violating its citizens'
26   constitutional rights. In <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-24,
27   105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985), the United States Supreme Court found
28   that a Section 1983 plaintiff cannot recover under a "custom" theory by simply

**19**
**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

producing evidence of the single, isolated incident of which he complains. Rather, a civil rights plaintiff must prove a pattern of "persistent and widespread" unconstitutional conduct by its employees that is so "permanent and well settled as to constitute a custom..." <u>Monell</u>, 436 U.S. at 690; <u>see also</u>, <u>Thompson v. City of Los Angeles</u>, 885 F.2d 1439, 1443 (9th Cir. 1989) ("Proof of random acts or isolated events are insufficient to establish custom"); <u>Bennett v. City of Slidell</u>, 728 F.2d 762, 768, n. 3 (5th Cir. 1984), <u>cert. denied</u> 472 U.S. 1016, 105 S. Ct. 3476, 87 L. Ed. 2d 612 (1985) ("Isolated [wrongful acts] are not the persistent, often repeated, constant violations that constitute [a] custom...").

   In light of this authority, courts have repeatedly required Section 1983 plaintiffs to support their "custom" allegations with multiple, similar past incidents – thereby demonstrating official knowledge and tacit approval of an unconstitutional course of conduct by municipal employees. <u>See</u>, <u>Sloman v. City of Simi Valley</u>, 21 F.3d 1462, 1470 (9th Cir. 1994) ("Individual action like [the defendant officer's] does not rise to the level of the 'well-settled', 'widespread' practices contemplated in the cases discussing municipal liability"; Jury verdict against city defendant for one employee officer's "habitual" conduct overturned as error.; <u>Bryant v. Maffucci</u>, 923 F.2d 979, 986 (2d Cir. 1991) ("In order to sustain [a Section 1983 government 'custom'] claim, more must be shown than a single incident in which a plaintiff was denied a constitutional right"); <u>Rodriguez v. Avita</u>, 871 F.2d 552, 554-555 (5th Cir. 1989) ("[A] single shooting incident by a police officer [is] insufficient as a matter of law to establish the official policy requisite to municipal liability under Section 1983"); <u>Williams v. City of Albany</u>, 738 F. Supp. 499, 502 (M.D. Ga. 1990) ("Municipal liability will not be found to exist under a theory of <u>respondeat superior</u> in a Section 1983 action. Nor can official municipal policy be established by proof of the occurrence of a single incident of unconstitutional activity"); <u>White v. Taylor</u>, 775 F. Supp. 962 (S.D. Miss. 1990).

20

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

In the absence of multiple, prior similar incidents, a Section 1983 plaintiff proceeding on a tacit, wrongful "custom" theory fails to make a prima facie case against a governmental entity. See, Anderson v. Everett Area School Board, 732 F.Supp. 39, 41 (W.D. Pa. 1989) ("Plaintiff has not demonstrated or even alleged any pattern of unconstitutional searches ... by [the government entity defendant]. ... In short there has been no showing that there were constitutional violations so widespread and a failure to discipline so pervasive that they allow an inference of supervisory encouragement, condonation or even acquiescence. Therefore, ***summary judgment for [the government entity defendant] must be granted***") (emphasis added); Wedemeier v. City of Ballwin, 931 F.2d 24, 26 (8th Cir. 1991) ("[Plaintiffs] proved nothing more than an isolated episode of police misconduct by two subordinate officers. We cannot infer the existence of an unconstitutional city policy or custom ... from this single occurrence"; Judgment Notwithstanding the Verdict ordered).

Taylor v. Castaneda, 740 F.Supp. 542 (N.D. Ill. 1990), forcefully summarizes the application of these principles. The plaintiff in Taylor alleged that defendant city maintained a "custom" of encouraging the use of unconstitutional field tactics. Plaintiff attempted to establish this alleged "custom" by relying on the single, isolated incident of which he complained. After reviewing dispositive Supreme Court precedent, the Taylor court summarily dismissed plaintiff's case:

> Consistent with Monell and its progeny, courts within this circuit and district have repeatedly held that the mere allegation of a single, unconstitutional act by a municipal employee will not support an inference that the employee acted pursuant to an official policy or unwritten custom.

Id. at 546.

Against this backdrop, to the extent that Plaintiffs will attempt to assert a tacit, wrongful City of Anaheim "custom," their Section 1983 claim is hopelessly

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  defective, as there is no such evidence of repeated similar conduct.  Moreover
2  there is no policy of the City of Anaheim that authorizes the use of excessive
3  force.

4    **E.    Plaintiff's Supplemental Claims Are Defective.**

5        Plaintiffs' supplemental state law claims fail for the same reason as their
6  federal claims. Like Drummond's federal claims, all of his state law claims are
7  premised on the assertion that he was subjected to excessive force. California
8  courts have essentially adopted the federal standard for resolving "excessive
9  force" claims against peace officers. See, Edson v. City of Anaheim, 63 Cal. App.
10  4th 1269, 1274, 74 Cal. Rptr. 2d 614(1998)(Adopting federal "excessive force"
11  standard in order "[t]o avoid jury confusion and to ease judicial administration . .
12  .."); Susag v. City of Lake Forest, 94 Cal. App. 4th 1401, 1412-1413, 115 Cal.
13  Rptr.2d 269 (2002)("[I]t appears unsound to distinguish between Section 1983 and
14  state law claims arising from the same alleged misconduct."); see also, Saman v.
15  Robbins (9th Cir. 1999) 173 F.3d 1150, 1156-1157 (9th Cir. 1999)(Section 1983
16  and state law battery claims require same evidentiary showing.) Thus,
17  Drummond's state law claims for assault and battery, negligent use of force,
18  negligent hiring and training, and intentional infliction of emotional distress fail
19  along with his defective federal Section 1983 allegations.

20    **F.    Plaintiff's Supplemental "Negligent Supervision and Hiring"**
21        **Claim Against the Anaheim Defendants Is Barred by Pertinent**
22        **Case  Law.**

23        Plaintiffs' supplemental "Negligent Training/Supervision" theory under
24  California law fails for additional reasons. Indeed, the Ninth Circuit has repeatedly
25  recognized that California *does not permit such causes of action* against local
26  governmental defendants. See, Blair v. City of Pomona, 223 F.3d.1074 (9th Cir.
27  2000); Van Ort v. Estate of Stanewich, 92 F.3d 831 (9th Cir. 1996).
28  Van Ort is the seminal case in this area, and its facts and holding merit somewhat

1   extended discussion here. The <u>Van Ort</u> plaintiffs claimed that a sheriff's deputy

2   "attacked and tortured" them. <u>Van Ort v. Estate of Stanewich</u>, <u>supra</u>, 92 F.3d at

3   834. Apart from suing the deputy, plaintiffs also brought suit under California

4   "negligence" law against the officer's municipal employer. Id. Specifically,

5   plaintiffs claimed that the officer's governmental employer was liable for its

6   alleged "failure to train, supervise and monitor [its] police officers properly...." Id.

7   at 835.

8        The trial court concluded that plaintiffs "could not maintain a suit against

9   the [defendant] County based on state negligence law." <u>Van Ort v. Estate of</u>

10  <u>Stanewich</u>, <u>supra</u>, 92 F.3d at 834. The Ninth Circuit affirmed.

11       The Court of Appeals initially acknowledged that "[i]n California, a

12  governmental entity can only be sued in tort pursuant to an authorizing statute or

13  enactment." <u>Van Ort v. Estate of Stanewich</u>, <u>supra</u>, 92 F.3d at 840, <u>citing</u>, <u>Lopez</u>

14  <u>v. Southern California Rapid Transit Dist.</u>, 40 Cal. 3d 780, 221 Cal.Rptr. 840

15  (1985). Under California's statutory liability scheme, the Ninth Circuit then found

16  that a governmental tort plaintiff suing a public entity is limited to seeking

17  recovery under <u>respondeat</u> superior principles for the acts of public employees

18  which occur "within the scope of [their] employment." <u>Id.</u> at 840, <u>quoting</u>,

19  California <u>Government Code</u> § 815.2(a).

20       The <u>Van Ort</u> plaintiffs argued that this language "leaves open the possibility

21  that there is statutory authority for a negligent supervision or promotion suit." <u>Van</u>

22  <u>Ort v. Estate of Stanewich</u>, <u>supra</u>, 92 F.3d at 840. The Ninth Circuit found

23  otherwise, and dismissed plaintiffs' "Negligent Supervision/Promotion" claim. <u>Id.</u>

24  at 840 (Finding that "the wording of the [pertinent governmental liability] statutes

25  does not support the [plaintiffs'] negligence claim.") The Ninth Circuit concluded

26  by emphasizing that California tort law did not require public entities to "take

27  special precautions, including in their supervision and promotion, to protect

28  private citizens". <u>Id.</u> at 841; <u>see</u>, <u>Blair v. City of Pomona</u>, 223 F.3d 1074, 1081

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1  (9th Cir. 2000) (Citing <u>Van Ort</u>, court holds that governmental tort plaintiff's

2  "claim for negligent supervision must be dismissed.")

3      Plaintiffs proceed as if the forgoing authority had never been published. Put

4  simply, the Ninth Circuit has spoken twice on the "Negligent

5  Training/Supervision" issue Plaintiffs attempt to raise in this case, and the Court

6  has rejected Drummond's position on both occasions.

7  **III.  EVIDENTIARY PROBLEMS**

8      Defendants will be bringing a Motion for Reconsideration of the

9  Court's Order granting Plaintiffs' Motion in Limine No. 2 to Prohibit

10 Drummond's Arrest Records and videotape of prior arrest.  Because the nature of

11 the claims have changed, Drummond's arrest records and accompanying videotape

12 are now relevant to this litigation.  Defendants will also be filing a Motion for

13 Reconsideration of the Court's Order denying the Anaheim Defendants' Motion in

14 Limine to exclude the "Positional Asphyxia" Bulletin based on the change of law

15 as discussed in <u>Muehler v. Mena</u>, 544 U.S. 93, 103 (2005).   Finally, Defendants

16 anticipate evidentiary issues with respect to Plaintiff Brian Drummond Jr.' s state

17 law claims, as Plaintiff failed to file a tort claim as required under California law.

18 <u>See</u>, <u>Gov.Code</u> § 945.4; see <u>Munoz v. State of Calif.</u> (1995) 33 Cal.App.4th 1767,

19 1776. (in general, no suit for money or damages may be maintained against a

20 governmental entity unless a formal claim has been presented to such entity, and

21 has been rejected or is deemed rejected by the passage of time).

22 **IV.  BIFURCATION OF ISSUES**

23      The Court ordered bifurcation on January 3, 2005 into two phases as

24 follows: "(I) liability of the Anaheim Officers under section 1983 and damages;

25 and (II) liability of the City and its Police Chief, liability of all defendants for State

26 law claims, and liability of the individual defendants for punitive damages."

27 / / /

28 / / /

**24**
**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

**V.    JURY TRIAL**

Timely requested by Defendants.

**VI.   ATTORNEYS' FEES**

Requested by Defendants pursuant to 42 U.S.C. §1988.

**VII.  ABANDONMENT OF ISSUES**

There has been no abandonment of any issues in the Second Amended Operative Complaint by Plaintiffs.  However, Defendants have filed a Motion for Summary Adjudication as to Plaintiffs' Fourteenth Amendment claims under 42 U.S.C. §1983, which is set for hearing on March 23, 2009.

DATED: March 2, 2009                          LYNBERG & WATKINS
                                              A Professional Corporation


                                    By:       _____/S/_____
                                              NORMAN J. WATKINS, ESQ.
                                              S. FRANK HARRELL, ESQ.
                                              SHANNON L. GUSTAFSON, ESQ.
                                              Attorneys for Defendants